Richard S. Heller, J.
These two claims, tried together by consent, arise from an automobile accident which occurred in the Town of Webster, Monroe County, New York. The basis for the claim is that the State was negligent in the maintenance of a State highway.
Allen and Johnson were employees of the Eastman Kodak Co. of Rochester, New York, and prior to the accident at 4:00 a.m. on March 24,1959, had worked the four to midnight shift at the plant. As soon as the shift was over they went to a bowling alley to play in a league which had been established for a longtime. After bowling, Allen, Johnson and one Graham went to a restaurant and had a substantial meal before Allen started to drive Graham and Johnson home.
Allen let Graham out and then proceeded easterly along Route 18, also known as Lake Road, in order to take Johnson home. In front of No. 223 Lake Road the car driven by Allen hit a hole in the paved portion of the highway, went out of control and overturned, injuring- Allen and causing the death of Johnson.
Route 18 is a narrow concrete road having two lanes of 10 feet each. The shoulders are narrow and the residents have built fences and mailposts close to the edge of the shoulders and utility companies have erected telephone poles within a few feet of the south edge of the pavement. This highway is heavily travelled and runs east and west. The road curves slightly to the right for an eastbound traveler from 213 Lake Road to No. 245 and then slightly to the left, creating a reverse curve of minor proportions.
On July 22, 1958, the State of New York granted to the Rochester Gas and Electric Corporation a permit to make excavations on the Lake Road to repair leaking gas mains. Three of these excavations were to be made in the south lane of the highway in the vicinity of No. 223 Lake Road in sizes *339 ranging from 2 feet 6 inches by 4 feet to 2 feet 6 inches by 6 feet. These excavations were made and refilled by the utility company, one with concrete and the two westerly patches with blacktop. The patching would not hold and on occasion the State would repatch the surface with blacktop as a temporary repair.
On the morning in question the most westerly excavation replacement had a hole of sufficient size to convince the court that the State was negligent in the care and maintenance of the highway. Claimants’ witnesses place the hole at (1) 2 by 3 feet and 6 inches deep, (2) 2% by 4 feet and 4 to 5 inches deep, and (3) % foot deep. The State’s witness, who was also their Safety Engineer, measured the hole shortly after the accident and found the “ scoured ” hole to be 36 inches long and 9 inches wide and 3% inches deep at the deepest point. (Fleury v. State of New York, 9 A D 2d 838.)
The court also finds that the State had notice of the defect in the highway. This road was excavated with their permission. The State had knowledge that the replaced pavement would not hold, yet they would not refill the holes with concrete as required by their own regulations because this procedure would hold up traffic for some time.
The State was further negligent in failing to warn the traveling public of an unsafe condition by some suitable sign. The only guidance given to a driver traveling east was a 35 miles per hour speed sign located one-half mile west of the accident scene.
Claimant Allen, driving a 1955 Volkswagen Sedan easterly at about 30 miles per hour, approached the curve to the right and slowed down some when he saw the hole ahead of him. He attempted to swing to the right but was prevented from missing the hole completely because of thinking he might hit the obstructions bordering the shoulder. When the small car hit the hole Allen went up in the air striking the top of the car. His next recollection of any matter is at the hospital.
After hitting the hole the car travelled some distance before it hit a wall and then on easterly for a short distance. Both Allen and Johnson were thrown out of the car and were found near the car as it came to a halt. The total distance travelled by the car after the impact was approximately 350 feet.
The court finds Delwin Johnson free of any contributory negligence. The court finds Henry C. Allen free of contributory negligence. While it is true that his car travelled some distance after the impact, his actions under all the circumstances cannot be condemned. (Seguin v. State of New York, 13 A D 2d 857, affd. 10 N Y 2d 1033.)
*340 Delwin Johnson was thrown from the car and suffered injuries from which he died on April 2,1959. His injuries of a cerebral concussion and a fractured skull were the most serious. It was necessary to perform a tracheotomy to relieve difficulty with breathing. There is evidence that he suffered conscious pain from March 25 to March 31, 1959. Medical bills amounted to $995.65. Funeral bills amounted to $1,010.20.
At the time of his death Delwin Johnson was 35 years of age, husband of Arlene Johnson and father of five children aged 15 years, 11 years, 9 years, 6 years and 5 months. His wages of approximately $8,500 at the time of his death had shown a gradual increase since 1954. This figure does not include other benefits incidental to his employment. His employment record as a film coater was rated excellent as to performance. He was a devoted husband and father with a record of participation in community affairs.
It is the opinion of the court that the claimant, Arlene Johnson, administratrix, etc., is entitled to a judgment against the State of New York in the amount of $8,000 for the conscious pain and suffering of the decedent, pursuant to sections 119 and 120 of the Decedent Estate Law, and to an additional sum of $142,005.85 as the pecuniary loss suffered by the widow and next of kin, plus the medical and funeral expenses. (Neddo v. State of New York, 194 Misc. 379, affd. 275 App. Div. 492, affd. 300 N. Y. 533; Lucivero v. Long Is. R. R. Co., 22 Misc 2d 674.) Said sum of $142,005.85 is with interest from April 21, 1959 to the date of entry of judgment. (Decedent Estate Law, § 132.)
Allen received extensive scalp lacerations, a slipped sixth cervical vertebra and a fractured seventh cervical vertebra. He was hospitalized for about three weeks and treated at home in bed for an additional six weeks. He returned to work on July 18, 1959 and had lost earnings for a period of 16% weeks.
Claimant Allen had special damages of approximately $5,500 for loss of earnings, medical care, and damages to his automobile. There is a permanent scar on the top of the head and a 25% limitation of movement in the lower neck. There is a permanent sensory disturbance in the left arm.
It is the opinion of the court that Harry C. Allen is entitled to the sum of $17,500 in full satisfaction of all damages, past, present and future.